**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MATTEO BRUNOZZI, an individual, *Plaintiff-Appellant*, v. CABLE COMMUNICATIONS, INC., a foreign corporation, *Defendant-Appellee.* | No. 15-35623 D.C. Nos. 3:14-cv-01128-MO 3:14-cv-01131-MO |
| CASEY MCCORMICK, an individual, *Plaintiff-Appellant*, v. CABLE COMMUNICATIONS, INC., a foreign corporation, *Defendant-Appellee.* | No. 15-35744 D.C. No. 3:14-cv-01128-MO OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, Chief Judge, Presiding

Argued and Submitted November 10, 2016
Portland, Oregon

Filed March 21, 2017

Before: M. Margaret McKeown and William A. Fletcher, Circuit Judges, and Jennifer A. Dorsey, District Judge.[*]

Opinion by Judge Dorsey

**SUMMARY**[**]

**Labor Law**

The panel reversed the district court's summary judgment in favor of the defendant in an action brought under the Fair Labor Standards Act and Oregon state law by plaintiffs who worked as technicians, installing cable television and internet services.

The panel held that the defendant's piece-work-based pay plan, which included a bonus designed to decrease in proportion to an increase in the number of overtime hours worked, violated the Fair Labor Standards Act's overtime provisions.

The panel reversed the district court's summary judgment on the technicians' claims under Or. Rev. Stat. § 652.140(1), which requires employers to pay all wages earned and unpaid

---

[*] The Honorable Jennifer A. Dorsey, United States District Judge for the District of Nevada, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

by the end of the first business day after a discharge or termination.

The panel also reversed the district court's summary judgment on one technician's retaliation claims under Or. Rev. Stat. § 659A.199, which prohibits a private employer from retaliating against an employee who has in good faith reported information that the employee believes is a violation of law, and Or. Rev. State. § 652.355, which prohibits an employer from discharging or otherwise discriminating against an employee who has discussed, made, or consulted an attorney about a wage claim. The technician verbally complained to his immediate supervisors that he was not being property compensated for overtime, and he refused to work any additional overtime hours unless he was paid an overtime rate. The panel held that the term "reported" in § 659A.199 means a report of information to either an external or internal authority. The panel held that the act of complaining about inadequate wages is a protected activity under § 652.355.

The panel remanded the case to the district court for further proceedings.

---

## COUNSEL

Phil Goldsmith (argued), Law Office of Phil Goldsmith, Portland, Oregon; D. Michael Dale, Law Office of D. Michael Dale, Cornelius, Oregon; David A. Schuck, Schuck Law LLC, Vancouver, Washington; Corinna Spencer-Scheurich, Northwest Workers' Justice Project, Portland, Oregon; for Plaintiffs-Appellants.

Mitchell C. Baker (argued) and Alexander A. Wheatley, Fisher & Phillips, LLP, Portland, Oregon, for Defendant-Appellee.

Shenoa Payne, Shenoa Payne Attorney At Law PC, Portland, Oregon, for Amicus Curiae Oregon Trial Lawyers Association.

## OPINION

DORSEY, District Judge:

Matteo Brunozzi and Casey McCormick worked as technicians for Cable Communications, Inc. (CCI) installing cable television and internet services. They filed separate lawsuits against CCI alleging that the company's compensation plan violates the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, and Oregon's statutory requirement that an employer pay all wages earned and unpaid after terminating an employee, ORS 652.140. Brunozzi additionally alleges that CCI violated Oregon's laws prohibiting discrimination against a private employee who engages in whistleblowing (ORS 659A.199) and wage-claim discussions (ORS 652.355). The district court granted summary judgment in favor of CCI on those claims. The technicians appealed. We reverse.

## I. Background

### A. Technician work and pay

CCI employs technicians to install cable television and internet services for Comcast customers. McCormick worked

for CCI as a technician for almost one year. Brunozzi was similarly employed by CCI for approximately five months. The unchallenged evidence shows that the technicians' work tasks are assigned by CCI on a daily basis. The company schedules the appointments with the customers; the technicians do not have authority to change appointment times or complete a task on a different day. These technicians' workweeks ordinarily exceeded 40 hours, and they were routinely scheduled to work six-day weeks.

CCI guarantees that its technicians will earn at least the statutory minimum wage and pays them on a piece-work basis. This means that the technician is paid a fixed rate for each piece of work (i.e., task) that he completes.[1] CCI's technicians sign a document entitled "Technician Pay Rate Program." The agreement states that the technician's gross earnings are the "[t]otal amount billed to the company by the employee for Piece Rate jobs completed in the pay period plus any bonus received . . . ."[2] It does not explain CCI's method for calculating the technicians' pay, but the parties mostly agree about how that is accomplished.

CCI begins by calculating the technician's "Piece Rate Total" for the week, which is the total value of the piece-work tasks performed by him that week minus any adjustments made for incomplete work or similar reasons. If the technician worked over 40 hours, CCI divides the Piece Rate

---

[1] The record does not reflect what work pieces the technicians performed or the values that CCI assigned to them.

[2] McCormick's agreement refers to "Commission Rate" jobs while Brunozzi's refers to "Piece Rate" jobs. No party argues that there is a distinction in this difference.

Total by the total number of hours worked to calculate his "average hourly" rate of pay for that week.[3] This hourly rate is then divided by two, and the resulting quotient is multiplied by the number of overtime hours the technician worked that week to arrive at the technician's base overtime pay—his "Piece Rate OT Premium."

CCI next calculates whether the technician has earned a "Production Bonus" by dividing the Piece Rate Total by 60, multiplying the quotient by 70, and subtracting from that product his Piece Rate Total and any Piece Rate OT Premium. Finally, if the technician earned a Production Bonus and worked overtime, CCI calculates the overtime due on the bonus—the Production Bonus OT Premium—by dividing the Production Bonus by the total number of hours worked in the week, dividing the resulting quotient by two, and multiplying that quotient by the number of overtime hours worked in the week. A technician's pay each week is his Piece Rate Total plus—to the extent that they are earned—Piece Rate OT Premium, Production Bonus, and Production Bonus OT Premium.

## B. Procedural history of the technicians' lawsuits

Brunozzi filed his complaint in state court alleging that CCI violated: (1) Oregon's overtime regulations[4]; (2) the

---

[3] The technicians claim that CCI's formula for calculating their regular rate each week is (Piece Rate Total + Bonus)/total hours worked. They cite the district court's orders for this proposition. But the district court was reciting how the regular rate is calculated under the federal regulations, not how it is calculated under CCI's plan.

[4] The district court dismissed this claim; Brunozzi does not challenge that dismissal in this appeal.

FLSA's overtime regulations; (3) Oregon's wage-claim- and whistleblowing-discrimination regulations; and (4) Oregon's wage-payment-on-termination regulations. After CCI removed the case to federal court, the parties filed cross-motions for summary judgment: the company moved on all of Brunozzi's claims while he moved on his FLSA overtime-violation and Oregon wage-payment-on-termination claims. The district court entered judgment in favor of CCI on Brunozzi's claims; Brunozzi timely appealed.

McCormick filed his complaint in state court alleging that CCI violated: (1) Oregon's overtime regulations; (2) the FLSA's overtime regulations; (3) Oregon's wage-payment-on-termination regulations; (4) the Oregon Family Medical Leave Act; (5) Oregon's disability-discrimination regulations; and (6) wrongful termination under Oregon common law. After CCI removed the case to federal court, the parties filed cross-motions for summary judgment: the company sought judgment on all of McCormick's claims, and he sought judgment on his FLSA overtime-violation and Oregon wage-payment-on-termination claims. The district court entered judgment in favor of the company on McCormick's FLSA and Oregon wage-payment-on-termination claims. Then the district court entered final judgment under FRCP 54(b) on those claims. McCormick timely appealed.

## II. Standard of Review

A district court's decision to grant summary judgment is reviewed de novo. *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008). When the parties file cross-motions for summary judgment, "we review each motion . . . separately, giving the nonmoving party for each motion the benefit of all reasonable

inferences." *Id.* "When the underlying facts are not in dispute, th[is] court's only function is to determine whether the district court correctly applied the law." *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011) (citing *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004)). "We review the district court's interpretation of state law, including state statutes, de novo." *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643, 646 (9th Cir. 2000) (en banc) (citing *In re McLinn*, 739 F.2d 1395, 1397–98 (9th Cir. 1984) (en banc)).

## III. Discussion

### A. The technicians' FLSA overtime-violation claims

#### 1. Overtime pay requirements under the FLSA

"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.'" *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (alteration in original) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). Among other things, the FLSA requires "employers to compensate employees for hours in excess of 40 per week at a rate of 1 ½ times the employees' regular wages." *Id.* (citing 29 U.S.C. § 207(a)). "The keystone of [this requirement] is the regular rate of compensation. On that depends the amount of overtime payments [that] are necessary to effectuate the statutory purposes. The proper determination of that rate is therefore of prime importance." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) ("*Youngerman-Reynolds*").

Although not defined in the FLSA, the Supreme Court has interpreted "regular rate" to mean "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Id.* (citing *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40 (1944)); *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 799 (9th Cir. 2010). "The regular rate by its very nature must reflect all payments [that] the parties have agreed shall be received regularly during the work week, exclusive of overtime payments." *Id.* In determining the statutory regular rate, "[w]e must look 'not to contract nomenclature' but to all payments, wages, piece work rates, bonuses, or things of value" that form "part of the normal weekly income" of the employee. *Walling v. Alaska Pac. Consol. Min. Co.*, 152 F.2d 812, 815 (9th Cir. 1945). "The 'regular rate' of pay under the [FLSA] cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract." 29 C.F.R. § 778.108 (citing *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464 (1948)).

For employees who are paid "on a piece-rate basis, the regular hourly rate of pay is computed by adding together total earnings for the workweek from piece rates and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked (except statutory exclusions)." *Id.* § 778.111(a). "This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the pieceworker's 'regular rate' for that week." *Id.* A pieceworker is entitled to be paid "the total weekly earnings at this regular rate for all hours worked" and overtime equal to "one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week." *Id.* "Only additional half-time pay is required

in such cases where the employee has already received straight-time compensation at piece rates or by supplementary payments for all hours worked." *Id.*

### 2. Comparing the FLSA's requirements with CCI's pay plan

The technicians argue that CCI's pay plan allows it to skirt the full burden of the FLSA's overtime pay requirement. The fault, they say, lies with the Production Bonus, which is designed to decrease in proportion to an increase in the number of overtime hours worked. CCI responds that its plan is legally sound because the FLSA does not regulate bonus amounts and the technicians are paid their piece-rate wages plus overtime premiums at ½ their regular rate as required by 29 C.F.R. § 778.111.

The crux of the issue is whether CCI's plan properly calculates a technician's statutory regular rate. To determine this, we must first determine what the parties agreed a technician is to be paid in a normal, non-overtime workweek. *See Youngerman-Reynolds*, 325 U.S. at 424. We then examine if CCI divides that sum by the total number of hours worked in the workweek to determine a technician's regular hourly rate for that week. *See* 29 C.F.R. § 778.111(a).

The employment contract states that during a normal, non-overtime workweek, a technician will receive the total value of the piece-work tasks that he completed—his Piece Rate Total—plus a Production Bonus in the amount of 1/6 his

Piece Rate Total.[5]   Because the Production Bonus is "a portion of regular wages [that] the [technician] is entitled to receive under his regular wage contract[,]" it is not a true bonus as defined by the Department of Labor (DOL). 29 C.F.R. § 778.502(a) (providing that a bonus is a sum paid in "addition to total wages usually because of extra effort of one kind or another, or as a reward for loyal service or as a gift").  Having agreed that the Piece Rate Total plus 1/6 that amount forms the technician's normal weekly income, CCI must divide the sum of those amounts by the total number of hours worked in a particular week to properly determine the technician's regular hourly rate for that week.  *See Youngerman-Reynolds*, 325 U.S. at 424.

But that is not what CCI does during weeks when a technician works overtime.  Instead, CCI reduces the Production Bonus paid during a regular forty-hour workweek by the amount of overtime premium that it calculates is due to the technician on his Piece Rate Total.  Because a "bonus" of 1/6 the technician's Piece Rate Total forms part of the technician's income in a normal, non-overtime week, diminishing or eliminating that "bonus" results in the technician being paid at a reduced hourly rate during weeks when he works overtime.  An agreement, practice, or device that lowers the hourly rate during statutory overtime hours or weeks when statutory overtime is worked is expressly prohibited under the regulations promulgated by the DOL

---

[5] The formula provided in the agreement for calculating the bonus is more complicated—(70*(Piece Rate Total/60)) - Piece Rate OT Premium—but the parties agree in their supplemental briefs that it is correctly simplified as (1/6)*Piece Rate Total for weeks when no overtime is worked.

interpreting the FLSA.[6]  The regulations state that "the parties cannot lawfully agree that the rate" that is "applicable to a particular type of work" "shall be lower merely because the work is performed during the statutory overtime hours, or during a week in which statutory overtime is worked." 29 C.F.R. § 778.316.  Similarly, when discussing schemes that establish artificially low regular rates in violation of the FLSA, the DOL cautions "that the hourly rate paid for the identical work during the hours in excess of the applicable maximum hours standard cannot be lower than the rate paid for the nonovertime hours nor can the hourly rate vary from week to week inversely with the length of the workweek." *Id.* § 778.500(b).  Agreements or practices that do this are "ineffective."  *See id.* § 778.316.

The diminishing "bonus" device in CCI's pay plan causes it to miscalculate the technicians' regular hourly rate during weeks when they work overtime and allows CCI to pay the technicians less during those weeks.  We thus hold that CCI's pay plan violates the FLSA's overtime provisions, and we reverse the district court's orders granting summary judgment in CCI's favor on the technicians' FLSA claims.

## B.  The technicians' claims alleging violations of ORS 652.140

Oregon Revised Statute section 652.140(1) requires employers to pay "all wages earned and unpaid at the time of

---

[6] The regulations contained in part 778 of title 29 of the Code of Federal Regulations "constitute[ ] the official interpretation of the Department of Labor with respect to the meaning and application of the maximum hours and overtime pay requirements contained in section 7 of the [FLSA]."  29 C.F.R. § 778.1.

discharge" by "the end of the first business day after the discharge or termination." The district court found that CCI's pay plan did not violate either Oregon law or the FLSA, so it concluded that the technicians' ORS 652.140 claims "fall away" and, thus, entered judgment in favor of CCI on those claims. Because we conclude that CCI's pay plan violates the FLSA's overtime provisions, we reverse the district court's order granting summary judgment in CCI's favor on the technicians' claims under ORS 652.140.

## C. Brunozzi's retaliation claim under ORS 659A.199

Oregon law prohibits a private employer from retaliating against an employee who "has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule[,] or regulation." OR. REV. STAT. § 659A.199(1). To establish a prima facie case of retaliation under ORS 659A.199, the plaintiff must demonstrate that (1) he was engaged in a protected activity; (2) he suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision. *C.f. Ruggles v. Cal. Poly. St. Uni.*, 797 F.2d 782, 785 (9th Cir. 1986) (reciting elements of a retaliation claim under Title VII of the Civil Rights Act).

The record reflects that Brunozzi verbally complained to his immediate supervisors on several occasions that he was not being properly compensated for overtime. Brunozzi's last complaint came two days before he was terminated, when he told his supervisor that he would not work on Saturday, April 5, 2014, "Because I'm not being paid overtime, as far as I can tell." Because the district court interpreted "reported" in ORS 659A.199 to mean reports only to authorities that are external to the employer, it found that Brunozzi's complaints to his

supervisors did not constitute protected activity under the statute and entered judgment against him on his retaliation claim. Brunozzi argues that the district court erred when it interpreted ORS 659A.199's "reported" to include only reports made to external authorities. We agree.

The legislature did not define the term "reported" as it is used in ORS 659A.199, and no Oregon state court has interpreted that term in the context of this statute. Our role when interpreting a state statute as a matter of first impression is to "determine what meaning the state's highest court would give to the law." *Bass v. Cty. of Butte*, 458 F.3d 978, 981 (9th Cir. 2006). "Thus, we must follow the state's rules of statutory interpretation." *Id.*

Under Oregon law, "[t]he first step [involves] an examination of text and context." *State v. Gaines*, 206 P.3d 1042, 1050–51 (Or. 2009) (en banc). In the second step, "[t]he court will consult [proffered legislative history] after examining text and context, even if the court does not perceive an ambiguity in the statute's text, where legislative history appears useful to the court's analysis." *Id.* at 1050. Oregon places legislative history "on a par with [the] text and context" of the statute. *Id.* at 1049. "However, the extent of the court's consideration of that history, and the evaluative weight that the court gives it, is for the court to determine." *Id.* at 1050–51. In the third and final step, "[i]f the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id.* at 1051.

Textually, ORS 659A.199 is broad and places no limit on the individual to whom the employee's information must be

"reported."  The statute does not provide much context other than to suggest that it is designed to safeguard an employee who, "in good faith[,]" has "reported information" that he "believes is evidence of a violation of a state or federal law, rule, or regulation."  These clues do not guide us toward either party's interpretation, so we must consider other cannons of construction.

If the legislature has not defined a statutory term, Oregon courts "ordinarily look to the plain meaning of a statute's text as a key first step in determining what particular terms mean."  *Comcast Corp. v. Dept. of Revenue*, 337 P.3d 768, 776 (Or. 2014) (en banc).  This "frequently" includes "the approach [of] . . . consult[ing] dictionary definitions of the terms, on the assumption that, if the legislature did not give the term a specialized definition, the dictionary definition reflects the meaning that the legislature would naturally have intended."  *Id.*  Oregon courts regularly consult *Webster's Third New International Dictionary*.  *Id.* at n.7.

According to that dictionary, "[t]he ordinary meaning of the verb 'report' is 'to give an account of: NARRATE, RELATE, TELL.'"  *Roberts v. Oregon Mut. Ins. Co.*, 255 P.3d 628, 632–33 (Or. Ct. App. 2011) (quoting *Webster's Third New Int'l Dictionary* 1925 (unabridged ed. 2002)).  Oregon courts recognize that "the context in which the word is used adds additional meaning to the definition."  *Id.* at 633.  Examples of other uses of the verb "report" are "to 'make a charge of misconduct against [another]'" or "'to make known to the proper authorities: give notification of.'"  *Id.* (alteration in original) (quoting *Webster's* at 1925).  But the context of ORS 659A.199 does not provide additional meaning to make either alternative use of "report" applicable.  *C.f. id.* (discussing that ORS 659A.230(1) provides context of

criminal activity, complaint, investigation, and trial and civil proceeding). We initially conclude from the text and context of ORS 659A.199 that the Oregon legislature intended to use the ordinary meaning of the verb "report" in this statute: to narrate, relate, tell. This interpretation supports Brunozzi's argument that the legislature intended ORS 659A.199 to cover both external and internal reports of violations.

The second step of Oregon's statutory-interpretation methodology is considering pertinent legislative history that a party may proffer. *Gaines*, 206 P.3d at 1050. The district court was not required to consider the legislative history of ORS 659A.199 because no party proffered any portion of that history to it. OR. REV. STAT. § 174.020(3). However, Brunozzi and the Oregon Trial Lawyers Association (OTLA) proffer pertinent portions of the legislative history to us; we may consider that history "to the extent that [we find] it . . . useful." *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1209 (9th Cir. 2010) (citing *Gaines*, 206 P.3d at 1050–51) (discussing Oregon's rules of statutory construction and how they contrast with standard federal statutory construction).

The proffered legislative history shows that ORS 659A.199 had its genesis in House Bill 3162, which was introduced to the Oregon Legislative Assembly during the 2009 Regular Session.[7] The bill's chief sponsor was Representative Stiegler, and it was referred to the House Business and Labor Committee, which held a public hearing

---

[7] *HB 3162 Enrolled*, Oregon Legislative Information, 2009 Regular Session (available at: https://olis.leg.state.or.us/liz/2009R1/Measures/Overview/HB3162).

on the measure on April 10, 2009.[8]  During that hearing, Rep. Stiegler stated that H.B. 3162 puts "private employees on equal footing with public employees at this stage of the game who already have a whistleblowing provision in ORS 659A."[9] She explained that H.B. 3162 "levels the playing field for the private employee" who has "tried to do the right thing by bringing" violations of state or federal law "to the attention of a superior in the chain of command, and ha[s] ended up paying the price either through demotion, reduction in salary, or loss of employment altogether."[10]  At a later hearing before the Senate, Rep. Stiegler elaborated that H.B. 3162 gives an employee "who wants to do the right thing[,] . . . [like] bring[ing] a bad practice to the [attention of his] higher ups, the ability to do so without repercussion, and hopefully give[s] the employer the opportunity to rectify that situation."[11]   Representative Chris Edwards and Senator Diane Rosenbaum similarly explained that H.B. 3162 would encourage "more internal reporting" by employees "so that the company, maybe even higher up the food chain than whoever is the bad actor, can deal with it internally and [the

---

[8] *Id.*

[9] *Hearing on H.B. 3162 Before the House Committee on Business and Labor*, First Public Hearing, 2009 Leg., Reg. Sess. at 1:22–1:40 (Or. Apr. 10, 2009) ("April 10 Hearing") (statement from Rep. Judy Stiegler).

[10] *Id.* at 1:40–2:13 (statement from Rep. Stiegler).

[11] *Hearing on H.B. 3162 A Before the Senate Committee on Commerce and Workforce Development*, Public Hearing and Work Session, 2009 Leg., Reg. Sess. at 37:19–37:42 (Or. May 18, 2009) ("May 18 Hearing") (statement from Rep. Stiegler).

company] can right [its] own ship without the involvement of the government."**[12]**

Numerous people testified in favor of H.B. 3162, including two OTLA attorneys who stated that the bill was necessary because Oregon law did not protect private employees who internally report legal violations to their employers like it protects public whistleblowers.**[13]** And several Oregonians who had been terminated after they internally reported legal violations to their employers likewise testified in favor of the bill.**[14]**

We find that the proffered legislative history is useful to answer the question before us. Having examined the text, context, and pertinent legislative history, we find that the Oregon legislature intended the term "reported" in ORS 659A.199 to mean a report of information to either an external or internal authority. We therefore reverse the district court's order granting summary judgment in CCI's favor on Brunozzi's retaliation claim under ORS 659A.199.

## D. Brunozzi's retaliation claim under ORS 652.355

Brunozzi's final challenge is to the district court's entry of summary judgment on his claim that CCI violated ORS

---

**[12]** April 10 Hearing at 39:49–40:49 (statement from Rep. Edwards); *accord Hearing on H.B. 3162 A Before the Senate*, Third Reading of House Measures, 2009 Leg., Reg. Sess. at 1:30:00–1:33:00 (May 28, 2009) ("May 28 Hearing") (statement from Sen. Rosenbaum).

**[13]** May 28 Hearing at 4:13–8:41; May 18 Hearing at 42:56–49:01.

**[14]** April 10 Hearing at 9:15–17:23, 20:39–28:25; May 18 Hearing at 49:07–57:10.

652.355, which prohibits an employer from discharging or otherwise discriminating against an employee who has discussed, made, or consulted an attorney about "a wage claim." Brunozzi complained to his supervisors on several occasions that CCI had failed to properly pay him overtime wages, and he refused to work any additional overtime hours (and specifically on Saturday, April 5, 2014) "unless [he] was paid an overtime rate of pay" for those hours. On this evidence, the district court was inclined to find a triable issue of fact regarding whether Brunozzi had made the type of "wage claim" protected by ORS 652.355, but it concluded that Oregon case law does not recognize complaining about inadequate wages as such a claim.

Brunozzi relies on *Brown v. American Property Management Corp.*, 1 P.3d 1051 (Or. Ct. App. 2000), to argue that Oregon law recognizes that the act of complaining about inadequate wages is a protected activity under ORS 652.355. Brown sued his former employer, American Property Management, for unlawful termination. *Brown*, 1 P.3d at 1053. Brown was a leasing agent for American and contractually entitled to a commission on office space that he leased. *Id.* Believing that he was not being properly compensated, Brown wrote a letter to his supervisor "complaining that [American] had not paid him for several leases that he had negotiated" and noting that he "had retained a lawyer who had advised him that his claims for commissions were well-founded." *Id.* at 1053–54.

But whether the employee had either filed or discussed filing a wage claim within the meaning of ORS 652.355 was not an issue in *Brown*. The *Brown* court focused on causation: whether Brown had been suspended because he discussed filing a claim or, as American claimed, to avoid

future liability. *Brown* thus cannot be read as interpreting ORS 652.355 to provide a bright-line rule that an employee makes, discusses, or inquires about a "wage claim" any time he complains about inadequate wages.

Nor does *De Bay v. Wild Oats Market, Inc.*, 260 P.3d 700 (Or. Ct. App. 2011), relied upon by the district court, control this inquiry. The employee in *De Bay* argued "that the allegations of his complaint [we]re sufficient to state a claim for common-law wrongful discharge because they allege[d] facts from which it can be shown that he was terminated for exercising important societal obligations and rights recognized in . . . ORS 652.355," but the district court dismissed this claim. *De Bay*, 260 P.3d at 703. The appellate court affirmed for two reasons: (1) De Bay had "not alleged that he made a wage claim or even discussed a wage claim with anyone," and (2) "[i]n any event," "ORS 652.355 provides an adequate remedy for those who have suffered retaliation for bringing a good faith wage claim[,]" so an employee cannot bring "a common-law wrongful discharge claim based on th[at] conduct." *Id.* at 704 (citing *Carlson v. Crater Lake Lumber Co.*, 796 P.2d 1216 (Or. Ct. App. 1990), *adh'd to as modified on recons.*, 804 P.2d 511 (Or. Ct. App. 1991)). To the extent that *De Bay* can be read to construe and apply ORS 652.355, it is factually distinguishable because De Bay's complaints focused on management's "criminal, illegal, and fraudulent business practices" related to communications to stockholders and other investors and "the retaliatory reduction of his bonus" as a result of those complaints, not inadequate wages. *Id*. at 703.

With no Oregon state-court opinion deciding whether complaints like Brunozzi's constitute a "wage claim" under ORS 652.355, we turn to Oregon's rules of statutory

interpretation. *See Perri v. Certified Languages Intern., LLC*, 66 P.3d 531, 539 (Or. Ct. App. 2003), *overruled on other grounds by*, *Cejas Comm. Interiors, Inc. v. Torres-Lizama*, 316 P.3d 389 (Or. Ct. App. 2013). We again begin with the text and context of the statute. ORS 652.355 makes it an unlawful employment practice to fire or discriminate against an employee because he has "made a wage claim or discussed, inquired about[,] or consulted an attorney or agency about a wage claim." The legislature defined "wage claim" in ORS 652.320(7) to mean "an employee's claim against an employer for compensation for the employee's own personal services, and includes any wages, compensation, damages or civil penalties provided by law to employee in connection with a claim for unpaid wages."

Because this is a circular definition—a "wage **claim**" is "an employee's **claim**"—and the Oregon legislature has not further defined "claim" in this context, we look to *Webster's*, which defines the noun "claim" to mean "an authoritative or challenging request: demand. . . ." *Webster's Third New Int'l Dictionary* 414 (unabridged ed. 1986). It gives other meanings for "claim," but neither the text nor context of the statute indicates that any meaning is more applicable than the ordinary one. Having examined the statute's text and context, we find that the Oregon legislature intended "wage claim" in ORS 652.355 to mean a demand or request that an employee has against his employer for compensation due and owing for the employee's personal services.[15]

Applying this definition to the facts of this case leads us to conclude that part of Brunozzi's claim for retaliation under

---

[15] We do not consider the legislative history for ORS 652.355 or 652.320 because no party has proffered it.

ORS 652.355 survives summary judgment. Brunozzi testified in deposition that he informed his supervisor that he was not working on Saturday, April 5, 2014, "Because I'm not being paid overtime, as far as I can tell." He stated that "[o]n or about April 5, 2014, I objected to [CCI's] failure to pay me my overtime wages, and I further notified [CCI] that I would not work additional overtime hours unless I was paid an overtime rate of pay." And Brunozzi further stated that he made other complaints to his supervisors that he was not being paid overtime.

Brunozzi's refusal to work additional overtime unless he was paid an overtime rate for those hours was a demand for future payment and does not qualify as a wage claim under Oregon law. *See Perri*, 66 P.3d at 538–40 & n.8 (concluding "that a wage claim for purposes of ORS 652.320(9) [renumbered to subsection (7) when the statute was amended in 2001] and ORS 652.355 must be either a claim for payment for services previously rendered or a claim for wages, compensation, damages, or civil penalties in connection with a claim for unpaid wages—that is, a claim for wages for services previously rendered"). But his complaints that CCI had failed to properly compensate him for overtime were at least discussions or inquiries about a demand for past-due wages if not the actual making of such a demand. These complaints were precursors to Brunozzi's filing of a formal demand in court for past-due overtime wages, and they qualify for protection under ORS 652.355. Accordingly, we reverse the district court's order granting summary judgment in CCI's favor on Brunozzi's ORS 652.355 claim.

**REVERSED and REMANDED for further proceedings consistent with this opinion.**